IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DURAYLE JACKSON,**

 **Plaintiff,**

 v.            CASE NO. 25-3013-JWL

**EMMIT LOCKRIDGE, et al.,**

 **Defendants.**

## MEMORANDUM AND ORDER

 Plaintiff, Durayle Jackson, brings this pro se civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Plaintiff's claims are based on incidents occurring during his detention at the Wyandotte County Jail in Kansas City, Kansas ("WCJ"). The Court finds that the proper processing of Plaintiff's Eighth Amendment and privacy claims cannot be achieved without additional information from appropriate WCJ officials. Plaintiff is also ordered to show good cause why his claims against Defendant Lockridge and his claims asserting a hate crime, an equal protection claim, a § 1985(3) claim, and his First Amendment right to assemble claim, should not be dismissed for the reasons stated herein.

**I. Nature of the Matter before the Court**

 On February 11, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC") directing Plaintiff to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 8). The Court's screening standards are set forth in the MOSC.

1

Plaintiff states that the events giving rise to his claims occurred at the WCJ "while incarcerated while enduring 23 hr. lockdown 7/27/23 – 1/24/24." (Doc. 8, at 10.) Plaintiff states that his injuries are "Psychological harm" and "Reputation (defamation)." *Id*. at 11. Plaintiff seeks $4,000,000 in compensatory damages and $2,000,000 in punitive damages. *Id*.

Most of the incidents relate to Plaintiff being labeled gay, a child molester, or a snitch. Plaintiff also claims that comments were made about him smelling like gender dysphoria. Plaintiff names 18 individuals working at the WCJ as defendants. *Id*. at 2.

Plaintiff's Amended Complaint on the Court-approved form does not state the nature of his case, his alleged counts, or his request for relief, and merely refers to attachments. *Id*. at 3–6. His attached "amended complaint" merely states that he is bringing his claims under the "5th and/or 14th: Substantive due process, Equal Protection and/or class of one," and "1st: Right to assemble; 8th Amendment Deliberate indifference (pain and suffering cruel and unusual); 4th Right to be let alone [penumbra right], False light (652 E)." *Id*. at 9.

Plaintiff provides the following factual allegations in his attachments, stating that the following occurred in H-Pod at the WCJ:

> That on 8/28/23 between 2 pm – 4 pm police came over (Brent Jones') radio the walkie talkies through the jail starting a riot saying that I need to be jumped and saying that it was a mason call demanding so. (Doc. 8–2, at 15.)
>
> On 9/12/23 while passing out lunch, Deputy Porath made false publications to inmate that we found out Durayle Jackson was gay and being on lockdown (disciplinary segregation) was his punishment. *Id*.
>
> On 9/12/23 Deputy Garcia and a nurse at 9:40 pm made false publications to inmates that I have Herpes and that I'm gay. *Id*. at 16.

> On 9/15/23 at 4:45 pm, while bringing hearing papers, DHO Officer Smith referring to exhibit Z tells inmate, making false publication, nobody likes him he's a fag and a rat anyway. *Id*.

(Doc. 8–2, at 15–16) (cleaned up).  Plaintiff also alleges that the following occurred in the SHU:

> 9/22/23 at 4:00 pm, walks in S.H.U. Deputy Pilfiger says out loud to make false publication to inmate community out loud we're now prosecuting saying my first and last name as gay. *Id*. at 17.
>
> 9/22/23 at 6:00 pm, Deputy Woods makes jokes to inmates he heard the rumor that day that I was gay also quoted to inmates that I am the guy who snitched. *Id*.
>
> 10/2/23 at 4:45 pm, Deputy Cole says she exposed my paper to inmates referring to me as a snitch then says Jackson better stay in the S.H.U. or he'll get beat up for being a snitch if I go back to GP. *Id*. at 18.
>
> 10/3/23 at 11 am, Deputy Porath while passing out lunch makes false publications to inmates that I'm gay. *Id*.
>
> 10/12/23 at 6:05 pm, Deputy Anderson makes false publication to inmates that I had sex with a 12-year-old girl. *Id*. at 19.
>
> 10/13/23 at 2:30 pm, Deputy Carlon and his Trainee looked in my cell and asked is this the guy that you guys are calling gay and Carlon responds saying it was all a gay game which turned serious. *Id*.
>
> 10/14/23 at 3–3:30 pm, Deputy Stoafer admits that he orgasmed in my food and also states that they can see me in my cell from the C/O station and makes false publications to inmates that I'm part of the itty bitty dick committee, also states that I'm gay and a pussy for letting the gay rumors go around the jail. *Id*. at 20.
>
> 10/17/23 at 7am, Deputy Huitt walked into the pod and told inmates that I was a gay demon and I liked to be called gay and says she put nutmeg in my bread and chemically induced my tray with herpes.  At 10:30 am she says to inmates that I look gay and molested.  At 11:30 am she says that she was hoping that I was getting gay based by inmates then says maybe if I used my manners my tray wouldn't be getting induced. *Id*.
>
> 10/17/23 at 2:00 pm, Deputy Huitt made a false publication on the radio/walkie talkie through the whole jail that I smell a bitch reeking dysphoria and I'm the gay and molested then sent a random officer to smell my cell. *Id*. at 21.

3

10/17/23 at 5:10 pm, Deputy Huitt walks in the unit and makes a false publication to inmates amongst the inmate community that I'm gay and smell like a homo and gender dysphoria. *Id*.

10/20/23 at 10:05 am, Deputy Carlon and Nurse fnu/lnu says to inmates that Durayle Jackson is a fag and that I need to go to a facility for sex offenders. *Id*.

10/20/23 at 9:40 pm, Deputy Jennings instructed the inmate community to yell, scream, and make false publications of fag/Chomo/snitch while taking a shower then replies that they just wanted to see what I was going to say. *Id*. at 22.

10/21/23 at 5:10 pm, Deputy Thomas makes false publication to inmates that Jackson is gay and is the local fuzz (police/informant/snitch). *Id*.

10/22/23 at 11:30 am, Deputy Huitt says to inmates out loud that they don't already qualify for immunity and might as well keep the gay bashing going. *Id*. at 23.

10/22/23 at 3:50 pm, Huitt says to the inmates that my cell smells like dysphoria, then asks a nurse if my cell smells like dysphoria and the nurse responds it does, and then Huitt and the nurse continue to make false publications to inmates that I'm gay. *Id*. at 24.

10/24/23 at 12:58, a deputy makes a false publication on Huitt's radio that the rumors of the gay and molested need to stop that I plan to sue. *Id*.

10/25/23, Deputy Rhodes while serving trays says she medically induced my tray with hep c and made false publications to inmates that I'm the gay and molested. *Id*. at 25.

10/30/23 at 7:00 am [in E-Pod], Deputy Huitt makes a false publication to inmates that my cell smells like dysphoria then I started being rationalized as a transgender by the staff and inmates. *Id*.

11/1/23 at 2:15 pm, a deputy radio states that I'm not gay and molested any more then at 5pm, announces on police radio that they were doing it all for humor and gossip. *Id*. at 26.

11/5/23 at 7:50 am, Deputy Okieke states that I'm molested and ride around with 14-year-old girls then makes false publications to inmates that I'm gay. *Id*.

11/7/23 at 5:50 pm, Deputy Okieke told the inmates to not call me gay and molested any more that I plan to sue! *Id*.

4

> 11/8/23 at 2:15 pm, Deputy Lopez told inmates to refer to me as the gay and molested. *Id*. at 27.
>
> 11/18/23 at 7:40 pm, Deputy Woods told inmates might as well keep the hate crime going he plans to sue anyway. *Id*. at 27.
>
> 12/18/23 at 12:40 pm, Deputy Kelly announces to inmates that I'm known as the guy who snitched. *Id*. at 28.
>
> 12/21/23 at 1:35, Deputy Strader's radio says that Durayle Jackson is a gay ass dude who snitched. *Id*.
>
> 12/22/23 at 11:55 am, Macias' radio makes false publication that the reason that the gay rumors are going through the jail is because I'm a snitch.[1] *Id*.
>
> 12/28/23 at 12:30–1 pm, Deputy Strader walked in the pod and announces out loud that Durayle Jackson is gay to the inmate community. *Id*. at 29.
>
> 12/29/23 at 3:05 pm, Strader told inmates the reason they are doing this is hoping that I would end up in a mental hospital. *Id*.

*Id*. at 15–29 (cleaned up).

## II. DISCUSSION

### 1. Defendant Emmit Lockridge

Plaintiff names Emmit Lockridge in the caption of his Amended Complaint but does not mention him in the body of his Amended Complaint. He also fails to include Lockridge in the list of defendants he includes at Doc. 8, at 2. Plaintiff should show good cause why his claims against Defendant Lockridge should not be dismissed.

### 2. Hate Crime

Plaintiff continues to assert a claim based on a hate crime. (Doc. 8–1, at 19.) Plaintiff alleges that the false light he was placed in while incarcerated has "followed [him] into society and has formulated to be a hate crime and injurious to [his] reputation." *Id*. at 3. He alleges that while incarcerated, he was the victim of what seems to him to be a "pure hate crime." *Id*. at 4.

---

[1] Plaintiff indicates in his Amended Complaint that he wants Macias removed from the case as "he was acting under good faith the false publications were said over his police radio threw [sic] the jail." (Doc. 8, at 2.)

5

The Court advised Plaintiff in the MOSC that he does not have a cause of action for a hate crime. Plaintiff does not have a cause of action based on criminal statutes. Section 249 is a federal criminal statute dealing with hate crimes motivated by the victim's actual or perceived sexual orientation, gender identity, gender, disability, race, color, religion, or national origin. *See* 18 U.S.C. § 249. Plaintiff does not have a private right of action to enforce criminal laws. As a general matter, federal criminal statutes that "do not provide for a private right of action" are "not enforceable through a civil action." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *see also Perkins v. Univ. of Kansas Med. Ctr.*, 2014 WL 1356042, at *4 (D. Kan. 2014) (finding claim under § 249 should be dismissed because "[t]hese federal statutes authorize criminal prosecution for various acts, they do not authorize a private cause of action") (citation omitted); *see also Pennington v. Meyers*, 2022 WL 656163, at *4 (D. Kan. 2022) (same). Plaintiff should show good cause why his hate crime claim should not be dismissed.

In addition, the Court is not authorized to direct state or federal prosecutorial authorities to bring a criminal case against any of the Defendants. *See Maine v. Taylor*, 477 U.S. 131, 136 (1986) ("the United States and its attorneys have the sole power to prosecute criminal cases in federal courts"); *Lynn v. Cline*, 2019 WL 2578241, at *2 (D. Kan. 2019) ("This Court cannot order the initiation of criminal charges, which is a decision within the discretion of prosecuting attorneys.") (citing *Presley v. Presley*, 102 F. App'x 636, 636–37 (10th Cir. 2004) (holding that a court order for "investigation and prosecution of various people for various crimes" would "improperly intrude upon the separation of powers")); *State ex rel. Rome v. Fountain*, 678 P.2d 146, 148 (Kan. 1984) ("[A] private individual has no right to prosecute another for crime and no right to control any criminal prosecution when one is instituted. Thus, the philosophy of this state

6

has always been that a criminal prosecution is a state affair and the control of it is in the public prosecutor.").

### 3. Class of One Equal Protection Claim

Plaintiff asserts a claim under the 5th and 14th Amendments based on "Sex and/or Gender discrimination." (Doc. 8–1, at 10.) Plaintiff also references a "class of one" equal protection claim, and a claim under § 1985(3).

The Court found in the MOSC that Plaintiff fails to provide any factual support for these claims. In his Amended Complaint, Plaintiff alleges that inmates Emmanuel Jones, Jemel Knox, Cortez Knox, Franklin White, and DeRay Cox, were not receiving the same treatment as Plaintiff. (Doc. 8–1, at 4.) To allege an equal protection violation, a plaintiff must state facts indicating that defendants treated him differently than other similarly situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To proceed upon an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631–32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). Plaintiff has failed to allege that the other inmates were similarly situated to him in every material respect. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.") (citation omitted). Plaintiff must show good cause why his equal protection claim should not be dismissed for failure to state a claim.

### 4. Section 1985(3)

Section 1985 deals with conspiracies to interfere with civil rights. *See* 42 U.S.C. § 1985.

Plaintiff fails to allege a conspiracy or to assert factual allegations in support of a conspiracy claim. To state a claim for conspiracy, a plaintiff must include in his complaint enough factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id.* Here, Plaintiff provides no factual information whatsoever to demonstrate any type of agreement was made between anyone.

Any conspiracy claim under § 1985(3) also fails because Plaintiff has not shown discriminatory animus against him based on his membership in a protected class. *See Garcia v. Yniquez*, 2022 WL 2734636, at *2 (10th Cir. July 14, 2022) (unpublished). Causes of action under both sections (2) and (3) require a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) (citations omitted); *see also Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) (a § 1985 claim lacking an allegation of "class-based or racial discriminatory animus" must fail)); *see also Chubb v. Brownback*, 2016 WL 5410615, at *7 (D. Kan. Sept. 28, 2016) ("To assert a plausible claim under § 1985(3), plaintiff must allege a conspiracy based on racial animus.") (citing *Jones*, 809 F.3d at 576).

### 5. First Amendment Right to Assemble

Although Plaintiff mentions a First Amendment right to assemble, he does not address this claim in the body of his Amended Complaint. A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*,

8

550 U.S. 544, 555 (2007) (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. Plaintiff should show good cause why his First Amendment right to assemble claim should not be dismissed for failure to state a claim.

### 6. Eighth Amendment Deliberate Indifference/Cruel and Unusual Punishment

Plaintiff alleges that he was incarcerated under conditions posing a substantial risk of harm. (Doc. 8–1, at 16.) "Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted). To prevail on a failure to protect claim, a plaintiff must show: "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

Plaintiff alleges that some of the defendants stated that he smelled like gender dysphoria. While unprofessional and inappropriate, comments like this do not rise to the level of a constitutional violation. The Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (quoting *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)). Where "the officers'

comments, although inappropriate, do not suggest a show of deadly force," they fail "to create 'terror of instant and unexpected death.'" *Id*.; *see also McBride v. Deer*, 240 F.3d 1287, at 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citation omitted).

However, the Tenth Circuit has held in a number of cases that "labeling an inmate a 'snitch' or otherwise inciting other inmates to harm an inmate states an Eighth Amendment violation, regardless of whether the inmate is ever actually physically harmed." *Harris v. Matthews*, 417 F. App'x 758, 763 (10th Cir. 2011) (unpublished) (citing *see, e.g., Benefield v. McDowall,* 241 F.3d 1267, 1271–72 (10th Cir.2001) (holding it is clearly established law that labeling an inmate a snitch and informing other inmates of that label with knowledge of the obvious risk of danger associated with that label violates the Eighth Amendment even though the inmate is never actually harmed; "a violation of the Eighth Amendment does not turn on the type [of] relief sought" and "may be implicated not only to physical injury, but also by the infliction of psychological harm"); *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir.1992) (holding plaintiff's claim that he was assaulted by other inmates as a result of a jail guard telling inmates that he was a snitch stated an Eighth Amendment violation); *Brown v. Narvais,* 265 F. App'x 734, 735–36 (10th Cir. 2008) (unpublished) (allegation that defendant disclosed plaintiff's status as a child molester knowing such label would subject the plaintiff to serious bodily harm stated an Eighth Amendment violation even though the plaintiff was never actually physically attacked); *Johnson–Bey v. Ray,* 38 F. App'x 507, 510 (10th Cir. 2002) (unpublished) (plaintiff's allegations that correctional officer intentionally told another inmate that plaintiff had tried to set him up for a disciplinary violation in order to place plaintiff in danger stated an Eighth Amendment violation; "[t]he fact that plaintiff suffered no physical injury resulting from the

10

officer's alleged action, although relevant to the issue of damages, does not require dismissal") (citation omitted); *Purkey v. Green,* 28 F. App'x 736, 745 (10th Cir. 2001) (unpublished) ("A prisoner states an Eighth Amendment violation by alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him. While an idle threat of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice.") (citation and quotations omitted)).

"Congress, in enacting the Prison Rape Elimination Act (PREA), recognized an inmate's sexuality (or the perception of their sexuality) could put them at risk for being sexually abused by other inmates." *Harker v. Neyhart*, 2021 WL 3883638, at *3 (D. Colo. 2021) (citing 28 C.F.R. § 115.241(d)(7)). "[L]abeling an inmate as gay is no joke in the lock-up environment . . . [l]ike a prison guard tagging an inmate as a snitch or a pedophile, labeling an inmate as gay could indeed raise a serious risk of harm." *Id*. However, a complaint making such allegations must still establish the subjective prong of the Eighth Amendment analysis and plausibly allege a defendant's subjective knowledge of a risk. *Id*. at *4.

The Court finding that the proper processing of Plaintiff's Eighth Amendment claim cannot be achieved without additional information from appropriate WCJ officials.

### 7. Right to Privacy

Plaintiff alleges a Fourth Amendment right to be left alone. Plaintiff cites cases for the proposition that the disclosure of one's sexual orientation is an invasion of privacy. (Doc. 8–1, at 7–9.) "[T]he Tenth Circuit generally recognizes only a limited right to privacy in the context of prison life." *Williams v. Reed*, 2018 WL 4826219, at *3 (D. Kan. 2018) (citing *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995)). The Supreme Court has recognized that "[a]

11

right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Telesford v. Annucci*, 693 F. App'x 1, 2–3 (2nd Cir. 2017) (quoting *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984)).

"[T]he Supreme Court has recognized a constitutional right to information privacy under the Fourteenth Amendment, *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); and the Tenth Circuit Court of Appeals 'has repeatedly interpreted . . . *Whalen* as creating a right to privacy in the non-disclosure of personal information' including confidential medical information." *Keltner v. Bartz*, No. 13-3022-SAC, 2013 WL 761157, at *3 (Feb. 27, 2013) (quoting *Herring v. Kennan*, 218 F.3d 1171, 1175 (10th Cir. 2000), *cert. denied*, 534 U.S. 840 (2001)). However, prisoners "retain only those rights that 'are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system.'" *Keltner*, 2013 WL 761157, at *3 (citations omitted).

The Court finds that the proper processing of this claim cannot be achieved without additional information from WCJ officials. *See Powell v. Schriver*, 175 F.3d 107, 112 (2nd Cir. 1999) ("We further conclude that the gratuitous disclosure of an inmate's confidential medical information as humor or gossip—the apparent circumstance of the disclosure in this case—is *not* reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy.").

### 8. State Law Claims

Plaintiff must state a federal constitutional violation. State statutes and causes of action do not provide a basis for liability under § 1983 which only protects rights secured by the Constitution and laws of the United States. *D.L. v. United Sch. Dist. No. 497*, 596 F.3d 768, 776

(10th Cir. 2010) (finding that "Plaintiffs' citations to Kansas case law to support their claim . . . is unavailing, as § 1983 affords a remedy for violations of federal law and does not 'provide a basis for redressing violations of *state* law.'") (citation omitted).

Plaintiff raises state law causes of action under Kansas law for invasion of privacy based on false light publicity, negligent infliction of emotional distress, and defamation. (Doc. 8–1, at 5–6, 22.) At this stage of the proceedings, it is not clear that Plaintiff has stated a federal constitutional violation. Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotations omitted); *see also Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) ("[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.") (citation omitted).

**III.** The Court finds that the proper processing of Plaintiff's Eighth Amendment and privacy claims cannot be achieved without additional information from appropriate WCJ officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate WCJ officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915(e)(2).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **April 25, 2025,** in which to show good cause, in writing to the undersigned, why his claims against Defendant Lockridge and his claims asserting a hate crime, an equal protection claim, a

13

§ 1985(3) claim, and his First Amendment right to assemble claim, should not be dismissed for failure to state a claim. Failure to respond by the deadline may result in the dismissal of these claims without prior notice for failure to state a claim.

**IT IS FURTHER ORDERED that:**

1. If Plaintiff's claims survive screening, the Court will enter a separate order directing the Clerk of Court to serve Defendants.

2. The WCJ officials shall submit the *Martinez* Report by **May 23, 2025**. Upon the filing of that Report, the Court will screen the remaining claims in Plaintiff's Amended Complaint. Officials responsible for the operation of the WCJ are directed to undertake a review of the subject matter of the Amended Complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(1) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the WCJ officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The WCJ officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(2) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric

examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(3)     Authorization is granted to the officials of the WCJ to interview all witnesses having knowledge of the facts, including Plaintiff.

(4)     No motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(5)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the Wyandotte County Sheriff as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the sheriff may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to the Wyandotte County Sheriff, and to the District Attorney for Wyandotte County, Kansas.

**IT IS SO ORDERED.**

Dated March 25, 2025, in Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**