**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DURAYLE JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>EMMIT LOCKRIDGE, et al.,<br><br>*Defendants*. | Case No. 5:25-CV-3013-EFM-JBW |

**MEMORANDUM AND ORDER**

Before the Court is a Motion to Dismiss (Doc. 42) from Defendants Emmit Lockridge, Teran Anderson, Fabian Carlon, Anita Cole, Angela Garcia, Lyndsey Huitt, Catherine Jennings, Lorenzo Kelly, Michael Lopez, Gabriel Okeke, Elizabeth Pfliegier, Cody Porath, Heaven Rhodes, Janell Smith, Shane Stoafer, Jonathan Strader, Joshua Thomas, and Brandon Woods ("Defendants"). Pro se Plaintiff Durayle Jackson originally brought several claims against Defendants, in their individual and official capacities, for conduct he was subjected to while incarcerated at Wyandotte County Jail ("WCJ"). The Court previously dismissed many of these claims.[1] In their Motion, Defendants assert that the remaining claims should be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Alternatively, Defendants assert Plaintiff has failed to state his Eighth and Fourth Amendment claims. As a last resort, Defendants assert they are entitled to

[1] Doc. 12.

qualified immunity. For the reasons stated below, the Court grants in part and denies in part Defendants' Motion.

## I. Factual and Procedural Background[2]

Plaintiff's claims stem from his treatment by Defendants—deputies and officers at WCJ—during his incarceration there. Plaintiff was incarcerated at WCJ beginning July 23, 2023. On September 12, Deputy Porath told another inmate Plaintiff was gay. Later that day, Deputy Garcia did the same thing. On September 15, Officer Smith told another inmate that Plaintiff was a "fag" and a "rat." Plaintiff filed his first inmate grievance on September 19, complaining about this behavior. Jail officials responded to the grievance by asking Plaintiff to clarify his request. On September 22, Deputies Pfliegier and Woods told other inmates Plaintiff was gay and a "snitch." Plaintiff filed another grievance on September 23. Jail officials responded: "Noted."

During October 2023, Deputies Cole, Porath, Carlon, Stoafer, Huitt, Jennings, Thomas, and Rhodes, on different days, each told other inmates and/or medical staff that Plaintiff was gay, a "fag," or a "snitch," sometimes using their radios to do so. On October 2, Deputy Cole suggested to Plaintiff that he would get beat up for being a "snitch." On November 2, Plaintiff filed another grievance complaining of this behavior. Jail officials responded with: "The radios are not used as a PA system."

Throughout November and December 2023, Deputies Okeke, Lopez, Kelly, and Strader told others that Plaintiff was gay or a "snitch." Plaintiff filed three grievances on November 6, 16, and 29. Jail officials did not sign or respond to the November 6 grievance. Jail officials responded to the November 16 and 29 grievances by asking for the names of the offending deputies, and by

[2] The facts in this section are taken from Plaintiff's Amended Complaint unless otherwise cited.

telling Plaintiff he needed to provide names, dates, and times to investigate. Plaintiff was released from WCJ on January 24, 2024.

After Plaintiff's release, he contacted Captain Brandon Jones of the Wyandotte County Sheriff's Office about his treatment. Plaintiff filed a formal complaint, but Capt. Jones requested more information to act on the complaint. Capt. Jones emailed Plaintiff, asking for as much detail as possible, including times, dates, and deputies' names. Plaintiff did not provide the requested information and initiated this action on January 24, 2025.

Since then, the Court has dismissed several Defendants and many of Plaintiff's claims from this case. The surviving claims are an Eighth Amendment failure to protect claim and a Fourth Amendment privacy claim. On February 25, 2026, Defendants filed this Motion to Dismiss the remaining claims.

## II. Legal Standard(s)

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[6] Under Rule 12(b)(6), the court must

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[9]

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[10] A pro se litigant is entitled to a liberal construction of his pleadings.[11] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."[12] However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[13]

## III. Analysis

### A. Plaintiff Need Not Exhaust All Administrative Remedies

Defendants first argue that Plaintiff's claims should be dismissed for failing to exhaust all administrative remedies as required by the PRLA in 42 U.S.C. § 1997e(a). Plaintiff counters that § 1997e(a) does not apply to him because it only applies to persons currently in custody.

---

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[10] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[11] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [the plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13] *Id.*

Section § 1997e(a) provides that "a prisoner confined in any jail, prison, or other correctional facility" cannot bring an action regarding prison conditions "until such administrative remedies as are available are exhausted."[14] The Tenth Circuit has held the text of § 1997e(a) is plainly and unambiguously limited to prisoners in custody.[15] When bringing a suit regarding prison life, a prisoner needs to exhaust prison administrative remedies, but a former prisoner does not.[16] A plaintiff's status as a prisoner is determined at the time the suit is filed.[17]

Here, Plaintiff was incarcerated from July 23, 2023, to January 24, 2024. Plaintiff filed his initial complaint on January 24, 2025. At the time of filing this suit, Plaintiff was not a prisoner. Therefore, § 1997e(a) does not apply to Plaintiff, nor does it require Plaintiff to have exhausted all administrative remedies before filing suit. Accordingly, the Court will not dismiss Plaintiff's claims for failing to exhaust administrative remedies.

**B. Eighth Amendment Claim**

Defendants next argue that Plaintiff fails to state a claim for failure to protect under the Eighth Amendment, and that this claim should be dismissed. Alternatively, Defendants assert that, even if there was a violation of the Eighth Amendment, qualified immunity bars this claim. The Court addresses each argument in turn.

To establish a claim for failure to protect under the Eighth Amendment, Plaintiff must sufficiently plead facts demonstrating two prongs: (1) he was "incarcerated under conditions

[14] 42 U.S.C. § 1997e(a)

[15] *Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1150 (10th Cir. 2005).

[16] *Id.*

[17] *See id.* (citing approvingly of the First, Second, Third, Sixth, Seventh, Eighth, and Ninth Circuits' determination that "it is the plaintiff's status at the time he files suit that determines whether § 1997(e)(a)'s exhaustion provision applies" (citations omitted)).

posing a substantial risk of serious harm" (an objective prong), and (2) "the prison official was deliberately indifferent to his safety" (a subjective prong).[18]

Here, Plaintiff argues that deputies labeling Plaintiff as gay, a "fag," and a "snitch" satisfies both prongs of a failure to protect claim. In regard to labeling Plaintiff as gay and a "fag," such labels could certainly raise a risk of serious harm, satisfying the objective prong.[19] But Plaintiff fails to plead facts that tend to establish that Defendants had subjective knowledge of any risks associated with being known as gay in jail, thus failing to meet the subjective prong.[20]

The labeling of Plaintiff as a "snitch," however, satisfies both prongs. The Tenth Circuit has held that labeling an inmate as a snitch potentially puts an inmate in danger of great harm and constitutes deliberate indifference.[21] Taking Plaintiff's factual allegations as true, labeling him as a snitch created a risk of serious harm, satisfying the objective prong.[22] Still, Defendants argue that Plaintiff failed to plead facts showing the Defendants had subjective knowledge of the danger. But Plaintiff states that at least one Defendant, Deputy Cole, told Plaintiff he would get beat up for being a snitch. This fact suggests that at least one Defendant drew the inference between being labeled a "snitch" and the harm associated with that label, satisfying the subjective prong.[23] Thus, Plaintiff has sufficiently pled facts that, when taken as true, create a facially plausible claim of failure to protect under the Eighth Amendment.

---

[18] *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[19] *See Harker v. Neyhart*, 2021 WL 3883638 at *4 (D. Colo. Aug. 31, 2021) (citing 28 C.F.R. § 115.241(d)(7) (recognizing that the perception of an inmate's sexuality could put them at risk for being victimized by other inmates)).

[20] *Id.*

[21] *Northington v. Marin*, 102 F.3d 1564, 1567 (10th Cir. 1996); *Benefield*, 241 F.3d at 1271.

[22] *Benefield*, 241 F.3d at 1271.

[23] *See id.* (finding the subjective prong satisfied when defendant "was aware of the obvious danger associated with a reputation as a snitch").

Plaintiff's pleading also saves him from Defendants' assertion of qualified immunity on his Eighth Amendment claim at this stage. The assertion of qualified immunity on a motion to dismiss results in "a more challenging standard of review than would apply on summary judgment."[24] The standard is more challenging because the Court accepts the facts as alleged in the plaintiff's complaint.[25] To overcome the assertion of qualified immunity, "the plaintiff must show (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct."[26]

Here, Plaintiff overcomes qualified immunity in his Amended Complaint regarding his Eighth Amendment claim. First, the Court has concluded that Plaintiff adequately states a claim that Defendants violated his Eighth Amendment right by calling him a snitch while in custody. Second, two cases in this Circuit, *Benefield v. McDowall*[27] and *Northington v. Marin*,[28] have clearly established that it is a violation of the Eighth Amendment to label an inmate a "snitch" since at least 1996.[29] Other Circuits have also found that labeling an inmate a "snitch" constitutes deliberate indifference.[30] Labeling an inmate a "snitch" was clearly a violation of the Eighth Amendment at the time of the alleged conduct. Accordingly, Plaintiff overcomes Defendants' assertion of qualified immunity at this stage, and the Court will not dismiss his Eighth Amendment claim.

---

[24] *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (quoting *Peterson v. Jensen*, 371 F.3d 199, 1201 (10th Cir. 2004).

[25] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

[26] *Truman*, 1 F.4th at 1235 (citation omitted).

[27] 241 F.3d 1267 (10th Cir. 2001).

[28] 102 F.3d 1564 (10th Cir. 1996).

[29] *Benefield*, 241 F.3d at 1271 (citing *Northington*, 102 F.3d at 1567).

[30] *Id.* (collecting cases from the Ninth, Eleventh, Fifth, and Eighth Circuits).

### C. Fourth Amendment Claim

Finally, Defendants argue that Plaintiff failed to state a Fourth Amendment right to privacy claim because none of Plaintiff's personal or medical information was disclosed. Alternatively, Defendants assert that qualified immunity bars this claim. The Court addresses each argument in turn.

While there is no explicit guidance from the Tenth Circuit, there are District Court cases that find the right to informational privacy is supported by Tenth Circuit precedent.[31] To state an informational privacy claim, the information must fall "within the ambit of constitutional protection when an individual has a 'legitimate expectation . . . that it will remain confidential while in the state's possession.'"[32] This legitimate expectation depends upon the intimate or personal nature of the information.[33] If there is a legitimate expectation of confidentiality, that information may only be disclosed—by the least intrusive method—to advance a compelling state interest.[34] Whether the information is true or false is irrelevant, as long as the information warrants constitutional protection.[35]

Here, Plaintiff alleges that Defendants were spreading false information about his sexual orientation, violating his right to informational privacy. The Court is certainly persuaded that one's sexual orientation is intimate and personal information. But the Tenth Circuit has not yet

---

[31] *See*, *e.g.*, *Moore v. Kobach*, 359 F. Supp. 3d 1029, 1047–49 (D. Kan. 2019); *Zesiger v. Leavenworth Cnty., Kansas*, 2025 WL 2806779, at *3 (D. Kan. Oct. 2, 2025).

[32] *Sheets v. Salt Lake Cnty.*, 45 F.3d 1383, 1387 (10th Cir. 1995) (quoting *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986).

[33] *Id.* (further citation omitted).

[34] *Id.*

[35] *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1155 (10th Cir. 2001).

determined whether information regarding one's sexual orientation falls within constitutional protections.[36]

If the Court assumes, without deciding, that sexual orientation falls within constitutional protection, the lack of Tenth Circuit guidance nonetheless implicates the second part of the qualified immunity test. This part of the test requires that "existing precedent must have placed the statutory or constitutional question *beyond debate*."[37] The Tenth Circuit has not ruled on the question of whether sexual orientation falls within constitutional privacy protections, and the debate has divided other Circuits.[38] It is not clear whether the disclosure of a person's sexual orientation violates one's Fourth Amendment right to privacy. Therefore, Plaintiff fails to carry his burden of showing the right was clearly established at the time of the potentially unlawful conduct. Thus, the Court dismisses Plaintiff's Fourth Amendment claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 42) is **GRANTED in part** and **DENIED in part**. Plaintiff's Fourth Amendment claim is dismissed.

**IT IS SO ORDERED.**

Dated this 25th day of September, 2026.

Eric F. Melgren

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[36] *Dimas v. Pecos Indep. Sch. Dist. Bd. of Educ.*, 2023 WL 2573345, at *8 (D. Kan. Mar. 20, 2023) (noting the absence of Tenth Circuit precedent on the issue).

[37] *Leiser v. Moore*, 903 F.3d 1137, 1140 (10th Cir. 2018) (citing *White v. Pauly*, 580 U.S. 73, 79 (2017)).

[38] *Contrast Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d Cir. 2000) (holding that an individual has a legitimate expectation of privacy regarding their sexual orientation), *with Wyatt v. Fletcher*, 718 F.3d 496, 505 (5th Cir. 2013) (holding that an individual does not have a clear, constitutionally protected right to privacy regarding their sexual orientation).